# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 16-cr-00111-JLK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CAMEO WILLIAMS, SR.,

    Defendant.

## MEMORANDUM ORDER ON SENTENCING

On June 19, 2017, after a five-day jury trial, Defendant Cameo Williams, Sr. was found guilty of making a single false statement under 18 U.S.C. § 1001(a)(2). Mr. Williams falsely claimed to a benefits decision review officer of the U.S. Department of Veterans Affairs (VA) that he had deployed during his military service. The maximum sentence for Mr. Williams's conviction is five years of imprisonment with a fine of up to $250,000.

In preparation for his sentencing, I have reviewed the Amended Presentence Investigation Report (PSIR) (ECF No. 155) and its four Addenda (ECF Nos. 154, 156, 160, & 163), Defendant's objections to the PSIR (ECF No. 151), Defendant's Sentencing Memorandum and Motion for a Variant Sentence (ECF No. 152), the government's Sentencing Statement (ECF No. 135) and Supplement thereto (ECF No. 158), and Mr. Williams's Objection to the Third Addendum to Presentence Report (ECF No. 161).[1]

---

[1] The government has not submitted any objections to the PSIR.

I have listened to the government's sentencing witness, Rebecca Kelley, Timika Williams's and Mark Bynog's statements to the Court, the arguments of counsel, and Mr. Williams's allocution. The following explicates my sentencing decision.

On October 24, 2017, I issued an order (ECF No. 144) rejecting the initial PSIR due to its unreliability and lack of necessary information. In that same order, I notified the parties that I would not be sentencing Mr. Williams pursuant to the U.S. Sentencing Guidelines. I explained:

> With respect to my decision not to use the Sentencing Guidelines, it is because I find them to be generally illogical and wholly inadequate under the present circumstances. "Perhaps the most fundamental flaw in the Sentencing Guidelines is that they are based on the assumption that you can, in the name of reducing disparities, isolate from the complexity that every sentence presents a few arbitrary factors to which you then assign equally arbitrary weights—and somehow call the result 'rational.'" Judge Jed S. Rakoff, *Why the Federal Sentencing Guidelines Should Be Scrapped*, 26 Fed. Sent. R. 6, 7 (2013). But I am sentencing a person, not a widget. The "few arbitrary factors" represented in the Probation Office's Guidelines calculation in this case do not even come close to encompassing its full complexity. Among other factors, they do not take into account Mr. Williams's mental status and likely need for treatment, his intent, his military service, his family circumstances, or the benefits, if any, he loses as a result of this conviction. Furthermore, I cannot emphasize enough the arbitrariness of the determination that commission of the same crime should result in a period of incarceration of 15 to 21 months when the economic loss is more than $95,000 but less than $150,000 yet should only result in a period of 6 to 12 months when the loss is more than $15,000 but less than $40,000. *See id.* (providing examples of the unjust sentences that result from applying the Sentencing Guidelines in cases involving economic crimes). Under the calculation in the Report, ten of the 16 offense level points used to determine Mr. Williams's Guidelines range result from the amount of the economic loss the government alleges. That amount does not in any way, however, "fairly convey the reality of the crime or the criminal." *See id.* Thus, I will not be using the Guidelines.

Order on Rejection of PSIR at 4-5. I iterate that the disparity in the Guidelines ranges caused solely by slight differences in the loss that occurred, or that was even just intended, is nonsensical and unjust. If ever there were a case not to apply the Sentencing Guidelines, it is this case.

Nevertheless, I must first determine the correct Guidelines range for Mr. Williams's sentence. *See Molina-Martinez v. United States*, 136 S.Ct. 1338, 1342 (2016). The Probation Office of the District of Colorado has calculated the range to be 15 to 21 months' imprisonment based on a total offense level of 14 and a criminal history category of I. The base offense level for Mr. Williams's conviction is six. So eight of the offense level points attributed to him result from the Probation Office accepting the government's allegation that he intended to cause the Veterans Administration a loss of $137,537.53, including the actual loss of $68,632.12 in funds he inappropriately received.

In his Objections to the PSIR, Mr. Williams argues that (1) the jury did not make any findings regarding the loss amount, (2) any statement he made other than the one for which he was convicted should not be considered relevant conduct, (3) the PSIR lacks particularized findings in support of its conclusion, (4) the government has not established by a preponderance of the evidence or provided discovery on the amount of the loss, (5) the Guidelines define loss as the greater of actual loss or intended loss, not the sum of the two; and (6) in government benefits cases, the loss is the difference between the amount of benefits the defendant should have received and did receive. It is not necessary for the jury to have made findings regarding the loss amount for the purposes of determining the applicable Guidelines range; I need only find that amount based on a reasonable estimate. *See United States v. Wilfong*, 475 F.3d 1214, 1217-20 (10th Cir. 2007); U.S.S.G. § 2B1.1 app. note 3(C). Although statements other than the one for which Mr. Williams was convicted cannot be considered for restitution purposes, his other statements regarding deployment are relevant conduct as to the intended loss under the Guidelines even if the jury made no findings regarding it. *See United States v. Griffith*, 584 F.3d 1004, 1012-14 (10th Cir. 2009). However, Mr. Williams is correct that the government bears the burden of proving the amount of the loss by a preponderance of the evidence. *See id.* at 1011.

Under the Guidelines, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 app. note 3(A). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss is "the pecuniary harm that the defendant purposely sought to inflict" including "intended pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 app. note 3(A). In a case involving government benefits, "loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses." *Id.* § 2B1.1 app. note. 3(F)(ii).

At the sentencing hearing, Rebecca Kelley, an authorization quality review specialist for the VA, testified regarding the amount Mr. Williams received, the additional amount he sought to receive, and the amount he should have received independent of any service-connected PTSD rating. Mr. Williams successfully pointed out discrepancies in the government's exhibits documenting those amounts. I find the government has established the loss amount to be $68,177.37,[2] which causes the overall offense level for Mr. Williams to be lower than that provided by the Probation Office. The government has failed to show to any degree of certainty any additional intended loss by Mr. Williams such that the loss amount should exceed the value of the benefits obtained by him as an unintended recipient.[3]

---

[2]I arrived at this number by raising the "proposed rate" in the government's Exhibit 5 from December 2013 to September 2015 to $1,227.09, the amount the government's Exhibit 4 documents Mr. Williams actually received when his disability rating was dropped to 60%.

[3]Besides, I agree with the Third Circuit that "[l]oss calculations under the Guidelines . . . generally involve a different analytical goal. Rather than measuring the more qualitative categories of criminal culpability and liability as such, the court attempts to reach an appropriate sentence by quantifying the amount of 'harm' wrought against the victim—here the government—by a particular criminal act." *United States v. Tupone*, 442 F.3d 145, 154 (3d Cir. 2006). That fact is part of my justification for rejecting the Guidelines in this case, but I believe the Third Circuit is correct that the Guidelines make the loss by the government as the victim, here $68,177.37, the key factor in determining Mr. Williams's total offense level. The Tenth Circuit has similarly held that the commentary in U.S.S.G. § 2B1.1 "establishes a floor for [the loss] calculation" and that when there is relevant conduct "aside from that underlying the offense of conviction," which was theft of VA benefits, the district court does not err in factoring in those damages into the loss. *United States v. Griffith*, 584 F.3d 1004, 1018 (10th Cir. 2009); *see also United States v. Jeffs*, No. 2:16-CR-82 TS, 2017 WL 6343666, *2-4 (D. Utah Dec. 11, 2017) (estimating the loss amount to be the value of benefits obtained by unintended recipients or diverted to unintended uses and not including the amount that might have been obtained had defendants scheme not been foiled). Here, there are no damages other than the unintended receipt of benefits by Mr. Williams.

Additionally, Mr. Williams objects to the Probation Office not lowering his offense level for his acceptance of responsibility. Mr. Williams attempted to plead guilty prior to his trial but was thwarted in that effort by government insistence on limiting the legal issues he wished to preserve for appeal. He did in fact file a notice of disposition that clearly manifests his acceptance of responsibility. Mr. Williams's offense level should be reduced two levels for his initial willingness to plead guilty. *See* U.S.S.G. § 3E1.1(a).

Mr. Williams's other objections to the PSIR are overruled. The Probation Office was very thoughtful in its analysis, and I am confident in its determinations.

Based on my findings regarding the loss amount and Mr. Williams's acceptance of responsibility, the total offense level for Mr. Williams is 10, making the proper Guidelines range 6 to 12 months' imprisonment with a fine range of $2,000 to $20,000.

As stated above, however, I do not sentence Mr. Williams pursuant to the Guidelines. And I would not regardless of what the correct range was found to be. Instead, I sentence Mr. Williams based on an individualized assessment of the criteria set out in 18 U.S.C. § 3553(a).

*Personal and Family Background*

Of primary importance, Mr. Williams has no criminal history. There is evidence that he has or had a gang affiliation, including a gang identifying tattoo, but there is no evidence of his engaging in any criminal activity relating thereto. His childhood and adolescent environment is marked by dysfunction, perhaps subjecting him to physical abuse and clearly exposing him to traumatic events including multiple residences, inadequate supervision, violent deaths of relatives and violence in the communities in which he lived. Somewhat surprisingly, however, Mr. Williams has viable and productive relationships with his children, his mother, his wife and his former wife, and other relatives. Despite his limited income and occupational choices he is and has been a responsible provider and attentive parent. He has demonstrated concern and

compassion for others less fortunate than himself and has long-range plans to enlarge his contributions to his community.

*Physical and Mental Health*

Mr. Williams would not be in front of this court facing sentencing were it not for his serious mental health needs. The various records, diagnoses, and evaluations he has received are muddled and inconclusive. I am most persuaded by the report of Dr. Jane Wells that his long listing of mental instability requires prolonged and intensive treatment. Dr. Wells notes anxiety disorder, depression, and perhaps a character disorder. Nonetheless, it is his weaving of false and fanciful concoctions—indeed outright falsehoods—that have brought him to the well of this court.

In addition to his serious mental health problems, Mr. Williams suffers from physical ailments that require continuing attention and care. He suffers from a chronic sleep apnea disorder that requires regular nocturnal use of a Continuous Positive Air Pressure machine (CPAP) without which fatal consequences can ensue. Inmates in the Bureau of Prisons have exceedingly limited access to CPAP therapy and this limitation presents an unwarranted danger to Mr. Williams's health. Mr. Williams also requires medical attention for and periodic evaluation of his patella femoral syndrome and tinnitus, which is often a side effect of chronic sleep apnea.

*The Need for the Sentence Imposed*

Under 18 U.S.C. § 3553(a), I am further required to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to deliver just punishment, and to provide needed educational or vocational training, medical care or other correctional treatment. In addressing these criteria, I first note that no violence to person or property occurred. The gravamen of the crime is lying to a government official. There is no

indication that the public needs protection or is in danger of violent behavior from Mr. Williams. He has complied with the conditions of his bond and terms of his pretrial and post-conviction release. A sentence other than imprisonment for a first offender convicted of a non-violent crime is favored. Besides, imprisonment is not the only means of punishment. As Justice Stevens wrote in *Gall v. United States*, "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." 522 U.S. 38, 48 (2007).

Throughout history, punishment has been curtailed or abated because of the defendant's need for treatment. What society needs and Mr. Williams needs directly is mental health treatment. The salient need for Mr. Williams to receive such prolonged treatment and the need for continuing treatment of his sleep apnea disorder can best be addressed while he is serving a sentence of probation rather than incarceration.

*The Need to Avoid Unwarranted Sentence Disparities*

Moreover, Mr. Williams's analysis of the sentences for similar and even more aggravated convictions in this District demonstrates that a sentence of probation is appropriate:

- Jerrold Minney, Case No. 11-cr-362-WYD. Mr. Minney was convicted of making a false statement on government forms filed with Housing and Urban Development (HUD). His deception resulted in a loss to the government of over $400,000. [Judge Daniel sentenced] Mr. Minney . . . to **5 years o[f] probation**.

- Jerry Blank, Case No. 11-cr-438-CMA. Mr. Blank received a needs-based pension from the Department of Veterans Affairs under his original social security number. He then created a new social security number and earned income under this new identity without reporting the income to the VA. Additionally, Mr. Blank applied for and was awarded social security benefits under his second identity. His deception occurred over a 20 year time period and resulted in Mr. Blank wrongfully receiving [$91,800] in social security benefits and $24,672 from the VA. [Judge Arguello sentenced] Mr. Blank . . . to **5 years o[f] probation**.

- Jeremy S. Peres, Case No. 13-cr-79-REB. Mr. Peres was a pilot for the Drug Enforcement Agency who was entitled to additional payments when he flew

missions under hazardous conditions. He submitted 44 false and fraudulent forms claiming hazard pay for missions he did not actually pilot or co-pilot. When confronted about the discrepancy between DEA records and his forms, Mr. Peres doubled-down on his lies and claimed he was actually flying for the FBI on those missions. Investigation showed that Mr. Peres never flew for the FBI. [Judge Blackburn sentenced] Mr. Peres . . . [to] **1 year o[f] probation**.

- Peggy Lee Derrera, Case No. 12-cr-145-WYD. Ms. Derrera failed to report financial changes to the social security administration after she remarried. She received $116,379 in benefits to which she was not entitled[.] [Judge Daniel] sentenced [her] to **5 years o[f] probation**.

- William Armstrong, Case No. 10-cr-378-WYD. Mr. Armstrong was a federal employee who was chief of the construction division at Fort Carson, Colorado. He used his position to receive construction materials for his personal home, and then lied about it on a government form. He was convicted of making a false statement[.] [Judge Daniel] sentenced [him] to **1 year o[f] probation**.

- Nuvia Yissell Hernandez, Case No. 14-cr-259-[MSK-DW]. Ms. Hernandez failed to report her gambling winnings on her food stamp recertification application. When confronted about her omission, she lied to investigators and said she was not the person who received the gambling winnings. [Judge Krieger sentenced her to] . . . **3 years o[f] probation**.

- Tina Michele Klos, Case No. 09-cr-42-JLK. Ms. Klos failed to tell the social security administration that she was no longer responsible for her daughter, for whom she was receiving supplemental benefits. [I sentenced] Ms. Klos . . . to **5 years o[f] probation**.

Williams's Sentencing Memo. at 18-19, ECF No. 152. Since many of the defendants in the above cases with more egregious facts than the instant one received only one to three years of probation, I find a sentence of a term of imprisonment would cause sentencing disparity.

For these reasons and those put forward by Mr. Williams, his Motion for a Variant Sentence[4] is GRANTED.

---

[4]As I wrote in *United States v. Henry Anthony Evans*:
> There is some confusion between the terms "departure" and "variance," which is understandable. The distinction has been made crystal clear in a number of cases, however. Judge Baldock noted in *United States v. Robertson*, that "a 'departure' occurs when a district court reaches a sentence above or below the recommended Guidelines range through the application of Chapters Four and Five of the Sentencing Guidelines, whereas a 'variance' occurs when a district court reaches a sentence that differs from the recommended Guidelines range through the application of the factors outlined in 18 U.S.C. § 3553(a)." *Robertson*, 568 F.3d 1203, 1206 (10th Cir. 2009) (citing

8

Mr. Williams's Motion asks for a probationary sentence but does not specify the requested length of probation. He has been on pretrial release for almost two years and has been fully compliant. I am concerned, however, with the clearly established need for Mr. Williams to receive significant mental health treatment and, therefore, think it is in the best interests of society and indeed of Mr. Williams that the needed mental health treatment not be attenuated by a shortened term of probation. Therefore, I sentence the defendant to probation for a period of five years. In the event that the probation officer charged with supervising Mr. Williams on probation determines there is just cause for early termination that can be done on the basis of facts not yet available.

In addition to the standard conditions of probation ordered by this Court, the following rulings and orders shall obtain.

1. Defendant does not have the resources or ability to pay a fine, and no fine is imposed. Defendant shall, however, pay the mandatory special assessment of $100, which is due and payable immediately.

2. There is no restitution to be paid in this case.

3. Defendant must not commit another federal, state, or local crime while on probation.

4. Defendant must not use, possess, buy or sell any controlled substance irrespective of whether any such substance is legal under any state law.

5. Defendant must cooperate in the collection of DNA as directed by the Probation Officer.

---

*United States v. Sells*, 541 F.3d 1227, 1237 n.2 (10th Cir. 2008)). Merely because *Gall* [*v. United States*, 552 U.S. 38, 49-50 (2007),] requires the sentencing court to first determine the correct Guideline calculation and then consider it as advisory does not mean that the sentence imposed is, *ipso facto*, a Guideline sentence.

Order on Remand at 3, Nos. 11-cr-00104-JLK, 16-cv-00131-JLK, ECF No. 152.

6. Defendant must participate until successful completion of a program or programs of mental health treatment as approved and directed by the Probation Officer.

7. Defendant must at all times remain compliant with all medications prescribed by his treating psychiatrist and other medical practitioners.

8. Defendant must perform a minimum of 80 hours of community service as directed and approved by the Probation Officer.

9. Transfer of probation supervision from the District of Colorado to the District of Nevada is hereby approved.

Defendant is advised of his right to appeal the sentence. If Defendant desires to appeal, a notice of appeal must be filed with the Clerk of the Court within 14 days after the entry of judgment or the right to appeal will be lost. If Defendant is unable to afford an attorney for an appeal, the Court will appoint one to represent him. If Defendant so requests, the Clerk of the Court must immediately prepare and file a notice of appeal on behalf of Defendant.

DATED this 22nd day of February, 2018.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE